IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| JAY LOPEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: |
| v. ) | |
| ) | 42 U.S.C. §1983 COMPLAINT |
| OFC. COLLINS, #7953, *et. al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## STATEMENT OF CLAIM III. C.

1. The following is an image of Defendants Collins, on the left, and Hernandez, on the right:



1.1.

2. The following are images of Defendants Fernandez, on the left, and Rodriguez, on the right:

1

Stout, Stout, & Stout, *Pro Se Litigation* |



2.1.

3. The set of facts in this complaint are the subject of a 00:41:22 video recorded by the Plaintiff. The Plaintiff hereby incorporates the video by reference into this complaint. The Plaintiff uploaded the video to his YouTube channel. The YouTube video's URL is: https://youtu.be/MwurJMiL_TA.

4. On July 17, 2018, the *Miami News Times* published an article titled "Ranking Miami-Dade's Most Corrupt Cities." On the list of most corrupt cities was Palmetto Bay.[1] The online article's URL is: https://www.miaminewtimes.com/news/miami-dades-most-corrupt-cities-ranked-105334 69. At all times material, the Plaintiff was engaging in investigative journalism in response to Palmetto Bay's current and ongoing municipal corruption.

5. The Plaintiff walked onto the sidewalk of the Palmetto Bay Village Hall property from Hibiscus Street, visibly videorecording. At all times material, the Palmetto Bay Village Hall property was traditionally and expressly open to the public for purposes of videorecording and press activity.

---

[1] In 2015, Palmetto Bay's Vice Mayor John DuBois harbored a political supporter's son who was a fugitive child-molester.

2

Stout, Stout, & Stout, *Pro Se Litigation* |

6. At 00:04:10 into the video, a woman kindly asked the Plaintiff as the Plaintiff walked past the woman, "Sir, do you need any help?"

7. The Plaintiff responded, "No, I do not. Thank you," as the Plaintiff continued on the sidewalk past the woman.

8. The Plaintiff stopped feet away from the woman, turned around, and asked the woman, "Do you work here?"

9. The woman responded, "Yes."

10. The Plaintiff replied, "And what's your name?"

11. The woman responded, "Why do I need to give you that information?"

12. The Plaintiff replied, "Well, I answered your question, right? And, you work for the public, don't you?"

13. The woman responded, "Why are you filming," before turning around and walking away from the Plaintiff.

14. The Plaintiff continued through the property's public parking lot, videorecording the area.

15. At 00:07:34 into the video, Defendants Collins and Hernandez menacingly accosted the Plaintiff on foot in the parking lot. Defendant Collins barked to the Plaintiff upon approach, "Excuse me, sir, can we help you," before stopping to within inches of the Plaintiff's camera.

16. The Plaintiff responded, "No, I don't need help. Thank you."

17. Defendant Collins replied, "What are you doing out here, sir?"

18. The Plaintiff responded, "You're interrupting my video. Hold on."

19. Defendant Collins replied, "No, actually, I need you to speak to me, sir, please."

20. The Plaintiff responded, "Am I detained right now?"

3

21. Defendant Collins replied, "You're on government property and we're asking what's going on."

22. The Plaintiff responded, "It's public, right?"

23. Defendant Collins replied, "Why are you filming? What are you filming?"

24. The Plaintiff responded, "What does it look like I'm filming? Right now, I'm filming you."

25. After providing their names and badge numbers upon request by the Plaintiff, Defendant Collins asked the Plaintiff, "What are you doing here?"

26. The Plaintiff responded, "I don't have to answer that."

27. The Plaintiff asked Defendant Collins three times, "Am I detained or am I free to go?" The Plaintiff stated to Defendant Collins, "If you're not going to answer me, I'm going to go."

28. Defendant Collins responded, "Where are you going to go-? Okay. Go ahead. Go."

29. The Plaintiff replied, "Okay. Thank you, very much," and continued through the parking lot.

30. Defendants Collins and Hernandez followed the Plaintiff within inches of the Plaintiff.

31. The Plaintiff asked Defendants Collins and Hernandez, "Are you going to follow me? Do you want to hold my hand?"

32. Defendants Collins and Hernandez continued following the Plaintiff through the parking lot, questioning the Plaintiff, until the Plaintiff stated to the Defendants, "Actually, I'm with the press."

33. Defendant Collins responded, "Do you have your press pass with you?"

5

34. The Plaintiff handed Defendant Collins a pocket-constitution and referred Defendant Collins to the First Amendment's freedom of the press clause.

35. Defendant Collins stated to the Plaintiff, "That's not an official press pass."

36. The Plaintiff responded, "You know who gives press passes? Nobody. Because freedom of the press means that everybody's press, just like freedom of speech. So, what you're doing right now, you're asking me for a pass to speak."

37. Defendant Collins replied in the affirmative.

38. The Plaintiff stated to Defendant Collins, "When I was born, that was my pass."

39. Defendant Collins responded, "Sir, that's not true."

40. The Plaintiff stated to Defendant Collins, "Alrighty, you have yourself a nice day," as the Plaintiff made his way out of the parking lot and onto the shoulder of Hibiscus Street.

41. The Plaintiff lawfully walked east on Hibiscus Street until reaching the corner of Hibiscus and Franjo Road where the Plaintiff crossed Hibiscus Street to access the westside Franjo Road sidewalk. The Plaintiff continued south on the Franjo Road sidewalk for one block until reaching the corner of Franjo and East Indigo Street.

42. Defendants Collins and Hernandez followed on the Plaintiff's heels for eight minutes from the Palmetto Bay Village Hall parking lot to the corner of Franjo and East Indigo.

43. The following images are topographical maps of the area in question:

43.1. 

43.2. 

43.3. The location in the parking lot where the Plaintiff was accosted by Defendants Collins and Hernandez is marked by a red blip titled "Plaintiff Accosted."

43.4. The orange line marks the Plaintiff's path of travel beginning from the shoulder of Hibiscus Street and to the corner of Franjo and East Indigo.

43.5. The yellow line marks Defendants Collins' and Hernandez's paths of travel from the Palmetto Bay Village Hall parking lot to the corner of Franjo and East Indigo

43.6.  The triangle shapes along the Plaintiff's and Defendants Collins' and Hernandez's paths of travel are arrow tips indicating the direction of travel.

43.7.  The box shapes at the end of the Plaintiff's and Defendants Collins' and Hernadez's paths of travel mark the area of Franjo and East Indigo where the Plaintiff was ultimately arrested by all four Defendants.

44.  At 00:15:00 into the video, on the corner of Franjo and East Indigo, Defendant Hernandez stated to the Plaintiff, "I'm telling you to have a seat now because now you're going to be detained."

45.  The Plaintiff responded to Defendant Hernandez, "What are you detaining me for? What's your reasonable suspicion," as Defendants Collins and Hernandez physically subdued the Plaintiff to the sidewalk.

46.  Defendant Hernandez replied, "I'm going to tell you why we're detaining you. It's an investigation for suspicious activity."

47.  The Plaintiff responded, "Filming?!"

48.  Defendant Hernandez replied, "Yes."

49.  The Plaintiff responded, "This is a protected activity."

50.  Defendant Hernandez replied, "What's your name, sir?"

51.  The Plaintiff responded, "What's the size of your penis," and, "I'm not giving you that," and, "If I committed a crime, I would give you that."

52.  The Plaintiff insisted on refusing to honor Defendant Hernandez's requests for identification.

53. Defendant Hernandez stated to the Plaintiff, "Due to your suspicious activity-" The Plaintiff responded, "Filming?!" Defendants Hernandez and Collins replied, "Yes," and, "Yeah," respectively.

54. The Plaintiff replied, "I can film police."

55. Defendant Collins responded to the Plaintiff, "Not a government building like that. That's a government building."

56. Defendants Collins and Hernandez repeated to the Plaintiff, "We're doing an investigation in reference to the government building that you were filming," and, "We're conducting an investigation for filming a government building," and, "You're not allowed to film government buildings," and, "The reason you're being detained is because due to the circumstances in our country today."

57. At 00:18:30 in the video, Defendant Fernandez, a police supervisor, and Defendant A. Rodriguez, a lieutenant, arrived at the scene in a patrol vehicle. Defendant Fernandez, the passenger, exited the vehicle and engaged the Plaintiff. Defendant Rodriguez remained in the vehicle.

58. The Plaintiff complained to Defendant Fernandez that Defendants Collins and Hernandez accosted, followed, and physically subdued the Plaintiff for filming. The Plaintiff explained to Defendant Fernandez that the Plaintiff had the Constitutional right to film the police and government officials from traditionally and expressly public spaces.

59. Defendant Fernandez nodded in the affirmative and agreed with the Plaintiff, "It's case-law."

60. Defendant Fernandez stated to the Plaintiff that Defendant Fernandez agreed with the Plaintiff's assertion that it was clearly-established that the Plaintiff had the right to film

the police and government buildings, and stated to the Plaintiff, "You're absolutely right, and we have no issue with that."

61. Defendant Fernandez continued, "However, today is a different day. The reason being is because we received information from our own 'homeland security bureau' about threats being made to police stations and municipal offices.[2] That's the reason why you're being detained." Defendant Fernandez further stated to the Plaintiff, "You're being detained because based on the information that we got from our homeland security bureau of people making active threats and recording in police stations."

62. The Plaintiff responded, "That's not me."

63. Defendant Hernandez replied to the Plaintiff, "But how do we know that if we can't tell who you are?" Defendant Collins also replied to the Plaintiff, "How can we check that you're a good citizen if we don't know who you are?"

64. Defendant Fernandez returned to the passenger side of his patrol vehicle. Defendant Fernandez remained in the patrol vehicle with Defendant Rodriguez for ten minutes as the two conspired to manufacture criminal charges against the Plaintiff.

---

[2] The "threats" that Defendant Fernandez was referring to were strongly-worded phone calls, emails, letters, and other communications sent by members of the public to Miami-Dade and other police departments expressing the public's dissatisfaction with crimes committed by specific officers and crimes committed by entire police departments. Members of the public have threatened Miami-Dade and other police departments with civil action, demonstration, and accountability. Defendant Fernandez believes that dissatisfaction expressed by members of the public towards the police is an actionable threat. But *of course* Defendant Fernandez characterizes investigative journalists and individuals who film the police as threats, so that Defendant Fernandez can criminalize those individuals and exercise public shows of force against those individuals to create the appearance that the police have the moral high ground. Defendant Fernandez *knew* that the Plaintiff was an investigative journalist or someone who films the police.

To the extent that the "threats" that Defendant Fernandez was referring to were regarding incidents of lone-gunmen openly brandishing firearms before murdering civilians on camera (hate-crimes, domestic violence, gang-related, etc.), and to the extent that the police believe that they could be the next targets of that violence, the threats are the firearms, not the cameras.

9

Stout, Stout, & Stout, *Pro Se Litigation* |

Stout, Stout, & Stout, *Pro Se Litigation* |

65. For ten minutes, Defendants Collins and Hernandez remained with the Plaintiff and attempted to defensively "copsplain"[3] their positions to the Plaintiff.

66. The Plaintiff emphasized to Defendant Collins that freedom of the press is not afforded any more or less protection than freedom of speech, that both rights share the same weight of protection, and that Defendant Collins was, essentially, detaining the Plaintiff for speaking. Defendant Collins responded, "Actually, no. There's suspicious activity going on." The Plaintiff replied, "A camera?!" Defendant Collins responded, "Of course."

67. Defendants Fernandez and Rodriguez exited their patrol vehicle and engaged the Plaintiff.

68. The Plaintiff emphasized to Defendant Fernandez that, just as a reminder, the Plaintiff would provide his identification to the Defendants under threat of arrest.

69. Defendant Fernandez responded, "I'm asking you. The officers asked you for your identification because we want to know who you are. Do you understand? And, now, I'm asking you for your I.D."

70. The Plaintiff replied, "Under threat of arrest? If I don't give it to you, are you going to arrest me?"

71. Defendant Fernazdez responded, "What I'm telling you is, if you don't have your I.D., if you're not going to give me your I.D., to know exactly who you are-" The Plaintiff replied, "And, you'll arrest me?" Defendant Fernandez responded, "I'm asking." The Plaintiff replied, "No, no, no. I'm asking you if I don't give you my I.D., you're going to arrest me, right?

---

[3] "Copsplaining" - Deceitful and misleading statements made by the police to targets of the police that are intended to defraud and manipulate police targets into cooperation.

10

72. Defendant Fernandez responded, "Under the criminal intelligence that we have received from our 'homeland security bureau,' based on the threats that we have been receiving for our police stations, our police property, you have failed to dispel our alarms inside our property."

73. The Plaintiff replied, "You could have just told me to leave, then."

74. Defendant Rodriguez stated to the Plaintiff, "It doesn't work that way. You're not I.D.ing?" Defendant Rodriguez stated to Defendant Hernandez about the Plaintiff, "Go ahead and read him his Miranda rights."

75. The Plaintiff responded, "I will give my I.D. under threat of arrest."

76. Defendant Rodriguez barked at the Plaintiff, "Just listen! Listen to the officer!" Defendant Hernandez commanded the Plaintiff to listen to Defendant Hernandez read the Plaintiff the Plaintiff's Miranda rights.

77. Defendant Hernandez commanded the Plaintiff to answer Defendant Hernandez's questions, "You're going to answer after I tell you! Do you understand?!"

78. The Plaintiff spoke on top of Defendant Hernandez, "I'm not answering anything. I'm pleading the Fifth Amendment. No. I'm not doing anything. Under threat of arrest, I will give you guys my I.D.," as Defendant Hernandez attempted to forcibly Mirandize the Plaintiff.

79. Defendant Rodriguez barked at the Plaintiff, "Just be quiet for a second!"

80. The Plaintiff responded, "I'm not listening to that because I haven't done anything wrong."

81. Defendant Rodriguez replied to the Plaintiff about Defendant Hernandez, "Listen to him. He's reading you your rights."

82. The Plaintiff responded, "But, I haven't done anything wrong."

83. Defendant Rodriguez replied, "But just be quiet for a second and listen to the rights!"

84. Defendant Hernandez stated to the Plaintiff, "I'm going to start over."

85. Defendant Rodriguez stated to the Plaintiff, "It's clear that we read you your rights."

86. The Plaintiff responded to Defendant Rodriguez that the Plaintiff understood that it was clear that Defendant Rodriguez stated that it was clear that Defendant Hernandez read the Plaintiff the Plaintiff's Miranda rights.

87. Defendant Fernandez stated to the Plaintiff, "All we're asking is for you to listen to your rights."

88. The Plaintiff responded, "But I don't want to listen, or acknowledge anything, because I don't want this to come back to me in court."

89. The Plaintiff stated to the Defendants, "I'm telling you one last time, I will give you guys my I.D. under threat of arrest."

90. Defendant Rodriguez responded, "Just be quiet. Just be quiet for a moment."

91. The Plaintiff replied, "I'm not answering or saying anything and I don't know anything," as Defendant Hernandez half-heartedly continued to attempt to forcibly Mirandize the Plaintiff.

92. Defendant Rodriguez responded, "Unfortunately, you have failed to dispel our suspicion for your whereabouts and your reason for being in the area, coupled with the fact that you have refused to identify yourself."

93. The Plaintiff replied, "No, I didn't refuse. I said under threat of arrest."

94. Defendant Rodriguez responded, "We're not threatening to arrest you."

95. The Defendants then placed the Plaintiff under arrest[4] and placed the Plaintiff's phone on the trunk of a patrol car for three minutes. Seconds before the video ends, the Plaintiff can be heard responding to the Defendants, "No, *I'm* giving *you* a chance to let *me* go."

96. The Plaintiff was jailed in a cold, dark, hard, and windowless holding cell for thirteen hours awaiting bail.

97. At all times material, the Defendants never asked the Plaintiff to leave the Palmetto Bay Village Hall property. Conversely, Defendants Collins and Hernandez encouraged the Plaintiff to continue filming from the Palmetto Bay Village Hall property.

98. At all times material, the Defendants never commanded the Plaintiff to produce identification or to produce identification under threat of arrest.

---

[4] The Plaintiff was arrested and charged with violating Florida Statutes:

856.021   Loitering or prowling; penalty.—
 (1)   It is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.
 (2)   Among the circumstances which may be considered in determining whether such alarm or immediate concern is warranted is the fact that the person takes flight upon appearance of a law enforcement officer, refuses to identify himself or herself, or manifestly endeavors to conceal himself or herself or any object. Unless flight by the person or other circumstance makes it impracticable, a law enforcement officer shall, prior to any arrest for an offense under this section, afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting the person to identify himself or herself and explain his or her presence and conduct. No person shall be convicted of an offense under this section if the law enforcement officer did not comply with this procedure or if it appears at trial that the explanation given by the person is true and, if believed by the officer at the time, would have dispelled the alarm or immediate concern.
 (3)   Any person violating the provisions of this section shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

843.02   Resisting officer without violence to his or her person.—Whoever shall resist, obstruct, or oppose any officer as defined in s. 943.10(1), (2), (3), (6), (7), (8), or (9); member of the Florida Commission on Offender Review or any administrative aide or supervisor employed by the commission; county probation officer; parole and probation supervisor; personnel or representative of the Department of Law Enforcement; or other person legally authorized to execute process in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

13

Stout, Stout, & Stout, *Pro Se Litigation* |

99. On March 29, 2021, the prosecutor dismissed both charges against the Plaintiff.

## CAUSES OF ACTION

### Claim 1 - First Amendment/ Freedom of Press Retaliation

100. Claim 1 is the Plaintiff's First Amendment/ Freedom of Press Retaliation claim against all four Defendants in their individual capacities. The Plaintiff has a First Amendment right to film the police and government buildings from traditionally and expressly public forums. The Defendants arrested the Plaintiff in retaliation for filming the police and the exterior of the Palmetto Bay Village Hall. By arresting the Plaintiff, the Defendants chilled and adversely affected the Plaintiff's First Amendment right to freedom of the press. By arresting the Plaintiff, the Defendants caused the Plaintiff to cease practicing the Plaintiff's First Amendment right to freedom of the press.

### Claim 2 - Fourth Amendment/ Illegal Detention

101. Claim 2 is the Plaintiff's Fourth Amendment/ Illegal Detention claim against all four Defendants in their individual capacities. The Plaintiff has a Fourth Amendment right to be free from illegal detentions. The Defendants detained the Plaintiff for filming the police and the Palmetto Bay Village Hall. The Defendants detained the Plaintiff without reasonable suspicion.

### Claim 3 - Fourth Amendment/ Illegal Arrest

102. Claim 3 is the Plaintiff's Fourth Amendment/ Illegal Arrest claim against all four Defendants in their individual capacities. The Plaintiff has a Fourth Amendment right to be free from illegal arrests. The Defendants arrested the Plaintiff for filming the police and the Palmetto Bay Village Hall. The Defendants arrested the Plaintiff without probable cause.

## Claim 4 - Fourth Amendment/ Malicious Prosecution

103. Claim 4 is the Plaintiff's Fourth Amendment/ Malicious Prosecution claim against all four Defendants in their individual capacities. The Plaintiff has a Fourth Amendment right to be free from malicious prosecution. The defendants maliciously instituted and maintained a criminal proceeding against the Plaintiff. The criminal proceeding was terminated in favor of the Plaintiff.

## Claim 5 - Fourteenth Amendment/ Denied Liberty w/o Due Process

104. Claim 5 is the Plaintiff's Fourteenth Amendment/ Denied Liberty w/o Due Process claim against all four Defendants in their individual capacities. The Plaintiff has a Fourteenth Amendment right against being denied liberty without due process. The Defendants accosted, detained, arrested, and retaliated against the Plaintiff without providing the Plaintiff with due process.