UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-20424-ALTMAN

JAY LOPEZ,

    **Plaintiff,**

v.

**OFC. COLLINS, #7953, et al.,**

    **Defendants.**

_____/

### DEFENDANTS' MOTION TO DISMISS COMPLAINT OR, ALTERNATIVELY, FOR A MORE DEFINITE STATEMENT

Defendants, Officer Kevin Collins ("Off. Collins"), Officer Alejandro Hernandez ("Off. Hernandez"), Sergeant Dennys Fernandez ("Sgt. Fernandez"), and Lieutenant Antonio Rodriguez ("Lt. Rodriguez") (the "Officers"), pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby move to dismiss the Complaint [ECF No. 1]. Alternatively, the Officers move under Rule 12(e) for an order requiring the Plaintiff to file a more definite statement.

### I.  INTRODUCTION

Whether for fun or for profit, on January 14, 2021 Plaintiff set out to draw the attention of Miami-Dade police officers assigned to the Village of Palmetto Bay ("VPB"). Cell phone in-hand, Plaintiff began by videotaping the outside of the VPB municipal building.[1] A police station resides inside the building.

In the midst of taping, a woman approached Plaintiff to offer him assistance and Plaintiff declined the offer. Instead, he demanded she identify herself to him. Plaintiff

---

[1] All the events described in the Complaint were videotaped by Plaintiff and incorporated into the Complaint by reference. [ECF No. 9 at 1-2 at ¶ 3]. The videotape footage was then uploaded to the "Jays Surreal Camera" YouTube channel. *Id.* The video, titled "Jays Surreal Camera – Full Arrest Video" (the "Video") is available at https://www.youtube.com/watch?v=MwurJMiL_TA. Undersigned counsel can arrange to have a copy of the video recording uploaded to a flash drive should the Court request it.

continued taping. Officers Collins and Hernandez became aware of Plaintiff's presence, approached him in the VPB parking lot, and began a forty-minute effort to ascertain who Plaintiff was and what he was doing. Plaintiff continued taping throughout. Almost twenty minutes into recording, Sgt. Fernandez and Lt. Rodriguez joined the questioning. But Plaintiff didn't answer their questions either and never revealed anything about himself or his activities. He did, however, continue taping. Sgt. Fernandez told Plaintiff about recent threats made to police stations and municipal offices. Plaintiff continued taping. After several more minutes of questioning, and with no more information gleaned since the Officers first encountered Plaintiff videotaping the outside of the VPB building, Plaintiff was arrested on charges of loitering and resisting without violence. It was only at the point of arrest that Plaintiff was forced to turn over his phone and cease taping.

The charges against Plaintiff were eventually dropped, and Plaintiff has since sued all four Officers for violating his constitutional rights under § 1983. His claims include: First Amendment retaliation (Count 1); illegal detention (Count 2), illegal arrest (Count 3), and malicious prosecution (Count 4) under the Fourth Amendment; and a claim for deprivation of due process under the Fourteenth Amendment (Count 5).

The Court should dismiss the Complaint because it is riddled with immaterial facts and fails to distinguish the alleged constitutional violations committed by the four individual Officers. Plaintiff has simply regurgitated nearly every moment of his interaction with police and then accused the Officers—as a group—of having violated his rights. This makes the Complaint a shotgun pleading and renders it subject to dismissal.

Should the Court decline to deem the Complaint a shotgun pleading, however, it should still dismiss Count 4 for malicious prosecution and Count 5 for a due process violation because the facts alleged do not fit either theory of recovery. The Officers are entitled to qualified

immunity. Alternatively, given the lack of clarity as to who is responsible for the misconduct alleged in each count, the Court should order Plaintiff to file a more definite statement.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of January 14, 2021, Plaintiff set out to videotape the Palmetto Bay Village Hall municipal building (the "VPB Building"). [ECF No. 1 at 4 and 1-2 at ¶ 5]; *see also* Video at 0:17-0:22. A woman observed Plaintiff doing just that and kindly asked him if he needed any help. [ECF No. 1-2 at ¶ 6]. Plaintiff replied that he did not and asked her for her name. *Id.* at ¶¶ 7, 10. The woman, a municipal employee, asked why she needed to provide Plaintiff that information. *Id.* at ¶ 11. Plaintiff replied because she worked for the public. *Id.* at ¶ 12. The woman asked why Plaintiff was filming, and then walked away. *Id.* at ¶ 13. Plaintiff continued videorecording and moved to the parking lot. *Id.* at ¶ 15.

Off. Collins and Hernandez approached Plaintiff in the parking lot. *Id.* at ¶ 15. Off. Collins asked Plaintiff, "[e]xcuse me, sir, can we help you?" *Id.* Plaintiff indicated he didn't need help. *Id.* at ¶ 16. Off. Collins asked Plaintiff five times what he was doing and why he was filming. *Id.* at ¶¶ 17, 21, 23, 25, 28. Plaintiff refused to answer. *Id.* at ¶¶ 20, 24, 26. Plaintiff continued to walk through the parking lot and Officers Collins and Hernandez followed. *Id.* at ¶¶ 29, 30. At one point, Plaintiff turned to the Officers and told them he was with the press. *Id.* at ¶ 32. Off. Collins asked Plaintiff for his press pass, and Plaintiff handed him a pocket-sized constitution. *Id.* at ¶¶ 33, 34. The parties went back and forth about whether a copy of the constitution was a press pass before Plaintiff said, "[a]lright, you have yourself a nice day," and walked out of the parking lot. *Id.* at ¶ 40.

Plaintiff walked a few blocks away from the VPB Building and the Officers followed. *Id.* at ¶¶ 40-42. Fifteen minutes into the Video Off. Hernandez told Plaintiff he was being detained based on reasonable suspicion because he was engaged in suspicious activity. *Id.* at ¶¶ 44-46. Plaintiff said, "filming?" and Off. Hernandez replied, "yes." *Id.* at ¶¶ 47, 48.

Plaintiff said it was a protected activity. *Id.* at ¶ 49. Off. Hernandez asked Plaintiff his name, and Plaintiff asked Off. Hernandez "what's the size of your penis?" *Id.* at ¶ 51. Plaintiff repeated that he would not disclose his name. *Id.* at ¶ 51. Plaintiff "insisted on refusing to honor Defendant Hernandez's requests for identification." *Id.* at ¶ 52.

A few minutes later, Sgt. Fernandez and Lt. Rodriguez arrived in a patrol vehicle. *Id.* at ¶ 57. Sgt. Fernandez listened to Plaintiff explain his belief that he had the right to film the police and government buildings. *Id.* at ¶¶ 58-60. Sgt. Fernandez replied that the Miami-Dade Police Department's "homeland security bureau" had reported "threats being made to police stations and municipal offices." *Id.* at ¶ 61. Sgt. Fernandez told Plaintiff that he was being detained in connection with those threats because the officers couldn't determine who he was. *Id.* at ¶¶ 61, 63.

Sgt. Fernandez asked Plaintiff to provide his I.D. *Id.* at ¶ 69. Lt. Rodriguez asked Plaintiff to provide his I.D. *Id.* at ¶ 74. Plaintiff responded he would only give his I.D. under threat of arrest. *Id.* at ¶¶ 70, 75, 78, 89, 93. According to Plaintiff, the Defendants (no distinction made between them) placed him under arrest for loitering and resisting an officer without violence. *Id.* at ¶ 95. On March 29, 2021, the prosecutor dismissed the charges against Plaintiff. *Id.* at ¶ 99.

Following his arrest, Plaintiff uploaded the forty-minute Video of his encounter with police to a YouTube account. As of the time of this filing, the Video has been viewed 10,551 times and generated 682 comments.

### III.  ARGUMENT

**A. The Court Should Dismiss the Complaint Because it is a Shotgun Pleading**

Rule 8(a)(2) governs the substance of pleadings: "A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (cleaned up). Relatedly, Rule 10(b) governs the form of

4

pleadings: "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

"Complaints that violate either [rule], or both, are often disparagingly referred to as 'shot-gun pleadings.'" *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). "They waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Id.* (cleaned up). The Eleventh Circuit has outlined four rough categories of shotgun pleadings. Falling under the first category are those that "contain[] multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire com-plaint." *Weiland*, 792 F.3d at 1321. The second category is populated by pleadings that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1321-22. The third category "commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1322-23. And the fourth category contains those that "assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. The "unifying characteristic" of all shotgun pleadings "is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*

The Complaint fails to give the Defendants that adequate notice. At a minimum, it falls into the fourth shotgun-pleading category because each of the five counts asserts a claim against the group of Officers without delineating which one is responsible for each alleged act of misconduct. This is problematic for many reasons, not the least of which being that the

Officers weren't together for the duration of the encounter—two of them, Sgt. Fernandez and Lt. Rodriguez, only appeared over eighteen minutes into the Video. [ECF No. 1-2 at ¶ 57]. Are the late-arriving Officers responsible for the illegal detention in Count 2? Are the facts that support the unlawful conduct the same for each of the four officers? Which officer arrested Plaintiff? Are all four responsible for his arrest? These are just some of the questions that arise when legal claims fail to distinguish between multiple defendants in requesting relief.

The Eleventh Circuit recognizes that when some of the factual allegations in a complaint "appear to relate to only one or two counts," it leaves the reader to "speculate as to which factual allegations pertain to which count." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n.9 (11th Cir. 1997). Like in *Chudasama*, Plaintiff frames five indiscriminate counts based on 99 paragraphs of factual allegations. Not one fact is tied to any of the five counts. The Complaint here is the kind of "all-too-typical shotgun pleading" that the Eleventh Circuit rejects. *Id.* This indiscriminate style of pleading makes it impossible for the Officers to assert—and the Court to adequately address—each one's individualized entitlement to qualified immunity. *Alcocer v. Mills*, 906 F.3d 944, 952 (11th Cir. 2018) (each official is entitled to "an individualized analysis of whether [he] is entitled to qualified immunity."); *see also Dorman v. Palm Beach County*, No. 19-81538-CIV, 2020 WL 2078527, at *2 (S.D. Fla. Apr. 30, 2020) (by pleading a "single accusation against all Defendants" the plaintiff fails to give them "'adequate notice of the claims against them.'") (quoting *Weiland*, 792 F.3d at 1323) (Altman, J.); *Waugh*, 2021 WL 3037050, at *3 (dismissing pleading where the plaintiff failed to specify which defendant was responsible for each particular act or omission). The Court should dismiss the Complaint as a shotgun pleading.[2]

---

[2] That Plaintiff is a *pro se* litigant doesn't give him any greater license to file shotgun pleadings. *Waugh v. Ralph*, No. 21-22306-CIV, 2021 WL 3037050, at *2 (S.D. Fla. July 16, 2021) (Altman, J.).

Further complicating matters is the fact that most of the thirteen-page factual narrative comprises immaterial facts. This case is about what Plaintiff *did* and the actions the Officers took in *response.* But the analysis is weighed down by 99 paragraphs of melodramatic details, including every sarcastic comment made by Plaintiff. None that relates to any cause of action against the Officers for violating Plaintiff's constitutional rights under the First and Fourth Amendments.

### B. If the Court Reaches the Merits, Plaintiff's Malicious Prosecution and Fourteenth Amendment Claims Should Be Dismissed Because the Officers Are Entitled to Qualified Immunity on Those Counts

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must state a claim for relief that is plausible, not merely possible." *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019) (en banc). A claim is "plausible" if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a court accepts well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff, conclusory allegations and legal conclusions do not receive that deference. *Bishop v. Ross Earle & Bonan*, P.A., 817 F.3d 1268, 1270 (11th Cir. 2016); *Turner v. Wells*, 198 F. Supp. 3d 1355, 1364 (S.D. Fla. 2016), *aff'd*, 879 F.3d 1254 (11th Cir. 2018). And though courts hold *pro se* pleadings, like this Plaintiff's, to a less stringent standard than pleadings drafted by attorneys and construe them liberally, *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011), that liberal construction does not give a court "license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action," *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (cleaned up).

A complaint is "subject to dismissal under Rule 12(b)(6) when its allegations—on their face—show that an affirmative defense bars recovery on the claim," *Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1309 (11th Cir. 2007) (cleaned up), and qualified

immunity provides such a defense to a § 1983 claim. Qualified immunity "protects the public from unwarranted timidity on the part of public officials," *Richardson v. McKnight*, 521 U.S. 399, 408 (1997), by protecting those officials "from undue interference with their duties and from potentially disabling threats of liability." *Paez v. Mulvey*, 915 F.3d 1276, 1284 (11th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)). The "central idea" of qualified immunity "is this pragmatic one: officials can act without fear of harassing litigation only when they can reasonably anticipate—before they act or do not act—if their conduct will give rise to damage liability for them." *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013) (cleaned up). To effectuate that central idea, courts have decided that "the 'breathing room' afforded by qualified immunity is generous; . . . 'it protects all but the plainly incompetent or those who knowingly violate the law.'" *Estate of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)); *see also Gates v. Khokar*, 884 F.3d 1290, 1298 (11th Cir. 2018) ("The rationale behind qualified immunity is that an officer who acts reasonably should not be held personally liable merely because it appears, in hindsight, that he might have made a mistake.").

Once qualified immunity is invoked, the plaintiff has the burden immediately to negate it, for it is "an immunity from suit" that is "effectively lost if a case is erroneously permitted to go to trial"—or even into pretrial discovery—before the court resolves the defendant's entitlement to it. *Simmons v. Bradshaw*, 879 F.3d 1157, 1162 (11th Cir. 2018) (cleaned up); *Howe v. City of Enterprise*, 861 F.3d 1300, 1301-03 (11th Cir. 2017). To invoke the defense, a defendant must show that his actions were "(1) undertaken pursuant to the performance of his duties and (2) within the scope of his authority." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017). Like the Officers here, those who undertake "challenged actions while on duty as police officers conducting arrest and investigative functions," "readily satisf[y] this this [discretionary authority] requirement." *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir.

2019); *see also* [ECF No. 1 at 4] ("All four defendants were employed, announced police officers for Miami-Dade police department and acted in their capacities as members of law-enforcement."). The burden thus shifts to Plaintiff, whose claims risk dismissal unless he has "plead[ed] facts showing (1) that the official violated a . . . constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 735 (cleaned up). The Court may consider the two prongs in any order, and "an official is entitled to qualified immunity if the plaintiff fails to establish either." *Piazza v. Jefferson County*, 923 F.3d 947, 951 (11th Cir. 2019); *see also Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) ("Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'") (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)).

A § 1983 analysis "begins by identifying the specific constitutional right allegedly infringed." *Corbitt*, 929 F.3d at 1312-13 (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). Here, because Plaintiff was arrested, "the Fourth Amendment clearly would apply." *Id.* at 1313. However, Plaintiff's claim for malicious prosecution in violation of the Fourth Amendment fails because Plaintiff's seizure was expressly accomplished through arrest and not prosecution. And with the Fourth Amendment providing an express source of rights, Plaintiff's claim for a deprivation of due process under the Fourteenth Amendment is misplaced. Counts 4 and 5 should be dismissed by this Court.

1. Plaintiff's Seizure Was Not in Relation to Prosecution and Therefore His Malicious Prosecution Claim Fails

To state a Fourth Amendment violation arising from malicious prosecution, a plaintiff must allege "both 'a violation of [her] right to be free of unreasonable seizures' and 'the elements of the common law tort of malicious prosecution.'" *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019). The unreasonable seizure element compels dismissal here because Plaintiff does not allege that he was "seized in relation to the prosecution." *Kingsland v. City*

*of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004), *abrogated on other grounds by Nieves v. Bartlett*, 139 S. Ct. 1715 (2019).

With a warrantless arrest, "the judicial proceeding does not begin until [the plaintiff] is arraigned or indicted." *Id.* Because a warrantless arrest occurs before arraignment, it "cannot serve as the predicate deprivation of liberty" that satisfies the seizure element. *Id.* Instead, the plaintiff must allege that she suffered a "significant or ongoing deprivation of liberty" sometime after arraignment or indictment. *Id.*

Plaintiff pleads no facts establishing that he suffered a deprivation of liberty ***after*** arraignment or indictment. *See, e.g., C.P. ex rel. Perez v. Collier County*, 145 F. Supp. 3d 1085, 1093 (M.D. Fla. 2015) ("The only constitutional violations alleged within plaintiff's complaint relate to plaintiff's seizure and warrantless arrest. As these occurred prior to the beginning of the judicial proceeding, they are not related to the prosecution for purposes of section 1983 malicious prosecution claims."). All he pleads is that he was "jailed in a cold, dark, hard, and windowless holding cell for thirteen hours awaiting bail, [ECF No. 1-2 at ¶ 96], but the mere allegation that time was spent in jail, without more, does not a Fourth Amendment seizure make. *See Kingsland*, 382 F.3d at 1236 (no Fourth Amendment seizure where plaintiff was jailed until the day after her arrest and thereafter was not incarcerated, though she was obligated to appear at her arraignment and two later hearings); *see also Donley v. City of Morrow*, 601 F. App'x 805, 813-14 (11th Cir. 2015) (no Fourth Amendment seizure where plaintiff was arrested without warrant and held in jail for nearly three days, and the criminal case was not dismissed for two-and-a-half years); *Woodruff v. City of Trussville*, 434 F. App'x 852, 853, 855 (11th Cir. 2011) (no Fourth Amendment seizure where plaintiff was subject to a warrantless arrest, spent twenty-two hours in jail before arraignment, was required to make pre-trial court appearances, could not leave the state without the court's permission, and was subject to trial and an appeal before being cleared of all charges).

Absent an allegation of some seizure specifically related to the prosecution, Plaintiff cannot claim that he suffered a constitutional violation arising from malicious prosecution. Consequently, the Officers are entitled to qualified immunity on Count 4.

2. <u>Due Process Rights Under the Fourteenth Amendment Are Not Implicated in A Common Arrest Setting Like This One</u>

Plaintiff's final claim accuses the Officers of violating his rights under the Fourteenth Amendment. He does not elaborate further, alleging only that the Officers "accosted, detained, arrested, and retaliated against [him] without providing [him] with due process." [ECR No. 1-2 at ¶ 104]. A quick look back at the facts section of the Complaint reveals no alleged misconduct apart from what occurred in the moments leading up to, and through, Plaintiff's arrest. Thus, Plaintiff's alleged deprivation of rights rests entirely upon his arrest and is redressable—if at all—under the Fourth, and not the Fourteenth, Amendment.

In *Albright v. Oliver*, 510 U.S. 266, 275 (1994) the Supreme Court ruled out a substantive due process claim under the Fourteenth Amendment as a means to redress an alleged wrongful prosecution.[3] The Court did so for a few reasons. First, the Court saw the petitioner's argument as seeking an extension of substantive due process rights, something the Court has never favored. *Id.* at 271-72. To the contrary, the Court has been reluctant to enlarge substantive due process rights beyond the traditional scope of "marriage, family, protection, and the right to bodily integrity." *Albright*, 510 U.S. at 271-72. Second, by virtue of the Fourth Amendment, the petitioner already had the means to vindicate an unlawful seizure. *Id.* at 274. When presented with both a specific textual source of constitutional protection and the general notion of substantive due process, the Court has always sided with the specific source

---

[3] The Fourteenth Amendment due process clause "confers both substantive and procedural rights." *Albright v. Oliver*, 510 U.S. 266, 272 (1994). Plaintiff doesn't specify whether he was allegedly aggrieved by a deprivation of his rights to procedural due process or substantive due process. Given that the Complaint lacks any reference to a procedural process of any kind, let alone one that was somehow defective, the undersigned has addressed Count 5 as directed at substantive due process rights only.

of rights. *Graham v. Connor*, 490 U.S. 386, 395 (1989) (rejecting a "substantive due process" approach to analyzing excessive force cases and holding that the Fourth Amendment's "objective reasonableness" standard governed). Apropos to what is at issue here, the Court noted how "[t]he Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." *Albright*, 510 U.S. at 274.

The reasoning in *Albright* extends to this case, where Plaintiff describes nothing more than a run-of-the-mill arrest. The lawfulness of Plaintiff's seizure is properly analyzed under the Fourth Amendment, which "provides an explicit source of protection for the right that Defendants allegedly violated." *Alcocer*, 906 F.3d at 955 (affirming district court's decision to apply the Fourth Amendment to plaintiff's claim for detention on an immigration hold even after posting bond because the over-detention was supported by probable cause).

Because the Fourteenth Amendment does not apply to this commonplace arrest, the Officers are entitled to qualified immunity. *Braswell v. Bd. of Regents of Univ. Sys. of Ga.*, 369 F. Supp. 2d 1371, 1380 (N.D. Ga. 2005) ("As the individual Defendants' conduct does not obviously implicate the Due Process Clause, these Defendants are entitled to qualified immunity."). The Court should dismiss the Fourteenth Amendment due process claim encompassed in Count 5 of the Complaint. *Horton v. Williams*, No. 2:06cv526-MHT, 2007 WL 1575974, at *2 (M.D. Ala. May 30, 2007) (dismissing Fourteenth Amendment claim because, "Horton cannot bring a separate due-process claim, independent of her Fourth Amendment claim, based on an arrest without probable cause.").

### C. If the Complaint Is Not Dismissed, a More Definite Statement Is Required Because Defendants Cannot Adequately Respond to the Complaint in its Current Form

If the Court elects not to dismiss the Complaint, it should still require Plaintiff to file a more definite statement. Defendants cannot prepare an adequate answer to this Complaint as it is currently drafted.

"Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996). "Under the Federal Rules of Civil Procedure, a defendant faced with a complaint such as [Plaintiff]'s is expected to move the court, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement." *Id.* at 366.

The Eleventh Circuit encountered a similarly deficient pleading in *Beckwith v. Bellsouth Telecommunications Inc.*, 146 F. App'x 368, 372 (11th Cir. 2005). The Court there affirmed the district court's order requiring a more definite statement because only a few of the plaintiff's claims "were specific as to any defendant, and the relevant facts were not segregated to each of their respective claims." *Id.* This rendered it "virtually impossible to ascertain what factual allegations correspond with each claim and which claim is directed at which defendant." *Id.* The Court found a more definite statement to be warranted so that neither the "district court, [n]or the defendants, [had] to 'sift through the facts presented and decide for [itself] which were material to the particular cause of action asserted.'" *Id.* (quoting *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 n. 9 (11th Cir. 2002)) (citations omitted).

That is exactly the problem the Complaint here presents: to be able to answer it, either this Court or the Officers would have to match particular facts to specific Officers in each of the five counts alleged. No such effort should be or is required. Instead, Plaintiff should be required to replead the Complaint in accordance with the Federal Rules of Civil Procedure.

## **CONCLUSION**

The Complaint in this case is a shotgun pleading and should be dismissed. Should the Court disagree, then it should at least dismiss the malicious prosecution and due process claims,

13

because they are not supported by prevailing law. In the alternative, the Court should order Plaintiff to allege which deprivation of rights is attributable to each individual officer by means of a more definite statement.

Dated: March 18, 2022

Respectfully submitted,
GERALDINE BONZON-KEENAN
Miami-Dade County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, FL  33128

By:  s/ Erica Zaron
Erica S. Zaron, Esq.
Florida Bar No. 0514489
Assistant County Attorney
Telephone:    (305) 375-5151

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served March 18, 2022, on all counsel or parties of record in the manner indicated on the Service List below.

s/ Erica Zaron
Erica S. Zaron

## SERVICE LIST

| Jay Lopez<br>13813 S.W. 169 Terr.<br>Miami, FL 33177<br>Tel: (786) 492-2735<br>Email: jaylopez480666@gmail.com<br>Pro Se Plaintiff<br>*Service by United States Mail* | Erica Zaron, Esq.<br>County Attorney's Office<br>Stephen P. Clark Center<br>111 N.W. 1st Street, Suite 2810<br>Miami, FL  33128<br>Tel: (305) 375-5151<br>Facsimile: (305) 375-5611<br>E-mail:  zaron@miamidade.gov<br>Attorneys for Defendants<br>*No Service* |
|---|---|